**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>CSC Developers, LLC,<br><br>Debtor. | C/A No. 18-02053-HB<br><br>Chapter 11 |
| IN RE:<br><br>Chandelle Runway, LLC,<br><br>Debtor. | C/A No. 18-02054-HB<br><br>Chapter 11<br><br>**ORDER DENYING MOTIONS TO ENFORCE SETTLEMENT** |

**THIS MATTER** is before the Court for consideration of the Motions to Enforce Settlement[1] filed by Chandelle Property Owners Association ("POA") and the Responses thereto.[2] Status conferences[3] and a contested hearing were held on May 21, 2019. Present at the hearing were Robert Cooper, counsel for the Debtors CSC Developers, LLC ("CSC") and Chandelle Runway, LLC ("Runway"), Robert Wood, counsel for the POA, and Luke Burke, counsel for John Stewart and Doug Cobb. The Court received documentary evidence and heard testimony from Ryan McCabe (state court counsel for the POA), Billy Israel (president of the POA), Cobb, and Stewart.

### FACTUAL AND PROCEDURAL BACKGROUND

CSC is a South Carolina limited liability company organized for the purpose of planning and developing a private aviation community in Spartanburg County known as the Chandelle subdivision, which includes an airpark runway that Runway owns.

---

[1] ECF No. 49, C/A No. 18-02053-hb. ECF No. 65, C/A No. 18-02054-hb.
[2] ECF No. 57, C/A No. 18-02053-hb. ECF No. 72, C/A No. 18-02054-hb. Although filed by attorney Luke Burke, Debtors' counsel Robert Cooper adopted the Responses and Burke pursued the Responses on behalf of John Stewart and Doug Cobb.
[3] ECF No. 40, C/A No. 18-02053-hb. ECF No. 59, C/A No. 18-02054-hb.

CSC and Runway (collectively, "Debtors") filed these Chapter 11 cases on April 23, 2018, with petitions signed by Stewart. Debtors remain in possession pursuant to 11 U.S.C. § 1107.

CSC's Schedules and Statements list ownership of real property (8 unimproved parcels of real estate) valued at $110,625.00 and personal property (checking account, accounts receivable and a mowing tractor) with a value of $87,407.00. Most scheduled creditors are listed with claim amounts of $0.00 and described as "Homeowner or Land Owner in Subdivision." The POA is also scheduled with a claim amount of $0.00. CSC's total scheduled debt of $533,453.00 consists of claims by Cobb and Nicole Cobb at $127,397.00, Gordon Zuber Estate at $145,330.00, and Stewart at $257,726.00, for debt described as "Partner's Capital." There is also a $3,000.00 listing for Bannister, Wyatt & Stalvey, LLC for legal fees. Ownership of CSC is disclosed as 37.50% held by Stewart (he is also the managing member); 22.50% held by Cobb; and 40.00% held by the Gordon Zuber Estate.

Runway's Schedules and Statements show ownership of a 12.08-acre tract, which forms the airpark runway through the subdivision, and a checking account with a $100.00 balance. Scheduled creditors match those listed for CSC, but for the $3,000.00 for legal fees. Stewart owns 50% of Runway, and Cobb and Nicole Cobb own the other 50%.

Debtors' Schedules and Statements disclose various lawsuits between them and scheduled creditors, owners, and other parties, pending in Spartanburg County Court at the time of filing. The dispute has been described as a "quiet title action," involving issues of improperly recorded restrictive covenants and turnover and maintenance of common areas. Claims filed in Debtors' cases are essentially identical, and total more than $14,000,000.00

in each case, including the POA's claim in the amount of $10,000,000.00 arising from state court litigation.

The case dockets include the following: 1) Applications to Employ Cooper as counsel for Debtors filed on May 16, 2018; 2) Addendums to Application filed May 31, 2019; and 3) Orders Granting Application to Employ filed May 31, 2018.[4] The Addendums include the following statement: "The undersigned counsel had not represented any of the owners prior to the filing of the two chapter 11 cases, nor do [sic] he represent any of those parties at this time, nor does he expect to represent any of those parties, during the course of either chapter 11 case." This statement is repeated in the Disclosure Statements filed with reorganization plans on October 27, 2018.[5] Objections to the plans and disclosure statements were filed by the POA and five property owners.[6] A confirmation hearing was scheduled for December 12, 2018, and continued to January 15, 2019 in order for the POA and Debtors to participate in a mediation to resolve issues raised in the objections to confirmation.

Cooper, Stewart, Cobb, Wood, McCabe, Israel, and Lyn Fleming, Bruce Goldberg, and Cindy Goldberg (members of the POA's Board of Directors), attended a 10.5-hour mediation on January 3, 2019. The POA asserts a binding agreement was reached as a result of mediation. However, no writing prepared on the day of mediation evidencing or outlining settlement terms was presented to the Court and no written documents presented to or drafted by the mediator were made part of the record.

---

[4] ECF No. 12, C/A Nos. 18-02053-hb & 18-02054-hb.
[5] ECF No. 21, C/A Nos. 18-02053-hb & 18-02054-hb.
[6] ECF Nos. 27-32, C/A No. 18-02053-hb. ECF Nos. 36-41, C/A No. 18-02054-hb.

Israel testified that during a settlement conference at Wood's office held several months prior to the mediation and shortly after the June 1, 2018, meeting of the creditors pursuant to § 341, Cooper made representations that he had full authority to bind the Debtors, Stewart and Cobb. Israel testified that following the mediation, statements were made by the mediator, Wood, and Cooper that an agreement had been reached. McCabe testified that Stewart and Cobb represented that Cooper was their personal attorney throughout their dealings and allowed him to negotiate on their behalf, but admitted he received no documentary evidence to that effect.

Cobb and Stewart testified that they were present at mediation but were not included in some discussions and did not agree to a settlement. Stewart testified that Cooper had counseled them regarding the limited scope of his representation, and they had unsuccessfully sought separate legal counsel. Cooper represented to the Court that he has not represented at any point in time Cobb, Stewart, or other owners of Debtors.

Stewart took notes dated January 11, 2019 from a phone conversation between Cooper, Cobb, and Stewart. The notes indicate that the latter two did not think they reached an agreement at mediation and believed negotiations would continue. The notes show they disagreed with Cooper as to some terms that others deemed settled at mediation.

On January 14, 2019, counsel for the POA emailed a proposed written settlement agreement to Cooper ("1st document"). The 1st document named the settling parties as the POA, CSC, Runway, Stewart, and Cobb. It also included terms that affected additional parties not present at the mediation. The 1st document did not reference or mention the bankruptcy cases and did not state that it was subject to any approval of this Court. Rather, the 1st document stated that the dispute arose from a lawsuit in the Spartanburg County

4

Court of Common Pleas captioned *Chandelle Property Owners Association v. CSC Developers, Chandelle Runway, LLC, et. al.* C/A No. 2016-CP-42-01854.[7] The 1st document involves, *inter alia*, the transfer of real property, execution of documents to alter property records, future levy of assessments, payment of funds, and releases. It requires Debtors to take certain actions and, therefore, requires Stewart and Cobb to act and execute documents on behalf of Debtors.

A continued hearing on the plans and disclosure statements was held on January 15, 2019. Cooper requested a continuance explaining that mediation had been "very successful" and the parties "need[ed] additional time to place the settlement in writing, to have all the parties review it, to communicate with each other, tie up the loose ends."[8]

Emails indicate that Cooper transmitted the 1st document to Stewart and Cobb on January 18, 2019. The record includes an email from Cobb titled "Confidential to Bob Cooper" that he testified was sent to Cooper on January 29, 2019. It states Stewart and Cobb believed the 1st document was vastly different than what was discussed at mediation and contained terms that were not negotiated. The email includes detailed notes, objections, and questions noted on the 1st document. Despite the testimony that the email was transmitted to Cooper and the heading "Confidential to Bob Cooper" on the exhibit, nothing on the exhibit includes an email address associated with Cooper or his office.[9]

---

[7] The complete caption is *Chandelle Property Owners Association v. CSC Developers, LLC, Chandelle Runway, LLC, 331 South, LLC, Charlie M. Allison, Janice H. Allison, James Douglas Armstrong, Jane Armstrong, Marilyn N. Berry, Stephen Berry, James P. Brockman, Sr., Douglas E. Cobb, Nicole Cobb, Kenneth L. Galloway, Molly C. Galloway, Warren Johnson, Rhonda Johnson, Lawrence E. Lewis, Barbara L. Lewis, John K. Payne, Ruth G. Payne, John R. Stewart, Jr., Angela Tanner, Helmut Tuemmel, Silvia L. Tuemmel, Jane Van Wieren as trustee of the Greer R.G. Irrevocable Property Trust, dated October 25, 2006, Martin Tuemmel, Raymond M. Clark, Jr., and also all other persons unknown, claiming any right, title, estate, interest in or lien upon the real estate described in the complaint herein.* See attachment to POC No. 1, filed Aug. 15, 2018 (C/A No. 18-02054-hb).

[8] *See* Transcript, ECF No. 46, C/A No. 18-02053-hb. ECF No. 62, C/A No. 18-02054-hb.

[9] *Compare* Ex. 10 *with* Ex. 27.

There is also no indication that the content of this email was shared with counsel for the POA at that time.

Cooper and McCabe had telephone conversations to discuss needed changes to the 1st document. As a result of these conversations, a second draft was provided to Cooper on February 15, 2019 ("2nd document"). Alterations to the 2nd document include changing deadlines, requiring the POA (rather than Debtors) prepare instruments that bind parties to restrictive covenants, clarifying that certain property owned by CSC could be used commercially, and modifying terms that require CSC's consent regarding a quorum at future board meetings. By email dated February 18, 2019, Cooper expressed to McCabe concerns regarding the 2nd document. Specifically, Cooper questioned the reasoning behind a $35,000.00 payment from Debtors to the POA, raised concerns over Debtors' potential inability to perform certain actions under the 2nd document, and addressed the preparation of further documentation. On February 19, 2019, McCabe responded to Cooper's questions and provided a third draft ("3rd document"). The 3rd document removed language granting the POA approval power over instruments that would bind parties to the restrictive covenants and requires the Debtors, Cobb, and Stewart obtain the signatures of others who were not present at the mediation.

At the continued hearing on the disclosure statements and plans held on February 26, 2019, Cobb and Stewart were present in the courtroom when Cooper again requested a continuance, stating he felt the parties were "eighty-five-percent complete in hammering the settlement out in writing."[10]

---

[10] *See* Transcript, ECF No. 47, C/A No. 18-02053-hb. ECF No. 63 C/A No. 18-02054-hb.

On March 20, 2019, Cooper was again sent a copy of the 3rd document, along with drafts of the documents to be used to bind the parties to the restrictive covenants.

Cobb and Stewart were present at the March 26, 2019, continued hearing on the plans and disclosure statements. Wood stated he believed a settlement had been reached, but noted his frustration that the 3rd document had not been signed by the parties. He discussed filing motions to enforce settlement if necessary, and subsequent dismissal of the bankruptcy cases after settlement.[11] Because the disclosure statements and plans were no longer relevant, Cooper withdrew both for the Debtors without objection.

On March 29, 2019, Cobb and Stewart sent to Cooper the following email:

> *We are enclosing our answers to their Settlement Agreement as you requested, however, only a few words have been changed from the copy we emailed to you on 1/29/19. Additionally, we are enclosing what we are willing to do to get this thing settled. We are most troubled that you stood before Judge Burris on 3/26 and said that we had agreed to their settlement demands when you knew that we have not said anything like that.*

Cooper responded: "I did not tell the judge you agreed to their settlement demands. I told her you needed time to review the third draft. She stated 'either you have an agreement or you don't.' She would not have stated that if she thought you agreed already."

The next day, Cooper sent an email to McCabe noting Stewart and Cobb's detailed comments as referenced above. In their comments, Stewart and Cobb agreed with many terms but also stated that Debtors would not agree to, could not agree to, conditioned, or qualified 15 of the proposed agreement's 22 paragraphs. The POA considered this email a repudiation and the Motions to Enforce Settlement followed.

## APPLICABLE LAW

---

[11] *See* Transcript, ECF No. 48, C/A No. 18-02053-hb. ECF No. 64 C/A No. 18-02054-hb.

7

"[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley v. Alcon Labs., Inc.* 277 F.3d 535, 540 (4th Cir. 2002) (citing *Millner v. Norfolk & W. Ry. Co.,* 643 F.2d 1005, 1009 (4th Cir. 1981)). "[T]o exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id.* at 540-41 (citing *Moore v. Beaufort Cnty.*, 936 F.2d 159, 162 (4th Cir. 1991)). "If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily." *Id.* at 541. "Instead, when such factual disputes arise, the court must 'conduct a plenary evidentiary hearing in order to resolve that dispute,' and make findings on the issues in dispute." *Id*. (citations omitted). "If a district court concludes that no settlement agreement was reached or that agreement was not reached on all the material terms, then it must deny enforcement." *Id*.

"The general rule is that counsel of record have the authority to settle litigation on behalf of their client." *Moore*, 936 F.2d at 163-164 (citing *Mid–South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 390 (5th Cir. 1984)). "It is generally accepted that when a client retains an attorney to represent him in litigation, absent an express agreement to the contrary, the attorney has implied authority to conduct the litigation and to negotiate its resolution." *Id.* (citing *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 229-230 (4th Cir. 1996)). Moreover, under South Carolina law, absent fraud or mistake, counsel of record has the authority to settle litigation on behalf of their client. *Id.* (citing *Arnold v. Yarborough*, 316 S.E.2d 416, 417 (S.C. Ct. App. 1984)).

"It is a recognized principle of bankruptcy law that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement can be deemed effective." *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1024 (8th Cir. 2010). That is, a settlement or compromise in bankruptcy is not enforceable in advance of bankruptcy court approval. *Id*. The Court's role in approving settlement agreements derives from the Supreme Court's decision in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S. Ct. 1157 (1968), where the Court stated:

> Compromises are "a normal part of the process of reorganization." In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts. At the same time, however, it is essential that every important determination in reorganization proceedings receive the "informed, independent judgment" of the bankruptcy court . . . The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable. There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.

*Id.* at 424–425, 88 S. Ct. at 1163 (citations omitted); *see also Reynolds v. Comm'r of Internal Revenue,* 861 F.2d 469, 473 (6th Cir. 1988) (explaining that bankruptcy courts are required to review and approve settlements because "[t]he need for this safeguard is obvious. Any settlement between the debtor and one of his individual creditors necessarily affects the rights of other creditors by reducing the assets of the estate available to satisfy other creditors; claims"); *In re Merry-Go-Round Enters., Inc.*, 229 B.R. 337, 347 (Bankr. D. Md. 1999) ("The nature of a bankruptcy case imparts upon the bankruptcy court a duty

to scrutinize settlements in a more exacting manner than would be warranted in a two party context.")

### DISCUSSION AND CONCLUSION

The POA asks the Court to find that the 3rd document is the agreement of the parties and to enforce that agreement. The POA's Motions to Enforce Settlement request the Court bind Debtors, Cobb, and Stewart in their corporate and individual capacities as the 3rd document indicates, order that these parties obtain the signatures of others as provided in the 3rd document, grant attorney's fees to the POA, and order Debtors to request dismissal of these cases.

The evidence does not support a finding that all those listed as settling parties in the 3rd document agreed to its contents. Rather, the evidence indicates that Cobb and Stewart did not participate in all discussions at the mediation and did not affirmatively express their consent. There is no support for a finding that Cooper represented them at the mediation; therefore, he could not bind Cobb and Stewart individually. Accordingly, the 3rd document does not reflect any agreement of Cobb and Stewart and they did not reach a binding agreement with the POA.

As between Debtors and the POA, Cooper had authority to bind Debtors at the mediation or thereafter.[12] Despite Cobb and Stewart's dissent, the evidence indicates Cooper believed that at mediation Debtors had settled on some terms and he was hopeful the remainder could be worked out. However, the Court cannot determine from this record the full, specific terms of any agreement reached at mediation. The parties continued to negotiate material terms thereafter and produced various drafts. The POA asserts the

---

[12] Notice to parties in interest and Court approval would also be necessary if that agreement was to be made part of any order of this Court. *See* Fed. R. Bankr. P. 9019.

agreement is documented in the 3rd document, but it requires action and agreement from others and affects the rights of individuals who are not listed as parties in that document. The 3rd document also includes Stewart and Cobb as parties to the settlement, which is not supported by the evidence.

The Court, therefore, cannot find that the 3rd document memorializes the agreement of all parties listed therein either at mediation or thereafter. The POA and its members may have other effective tools available in bankruptcy to move the case toward the POA's desired result, but the Motions to Enforce Settlement must be denied.

**IT IS, THEREFORE, ORDERED** that Chandelle Property Owners Association's Motions to Enforce Settlement and all relief requested therein are denied.

**FILED BY THE COURT**
**05/29/2019**



US Bankruptcy Judge
District of South Carolina

Entered: 05/29/2019